**Florence M. HEINE, Appellant,**

v.

**JOHN R. THOMPSON CO., a Corporation,
Respondent.**

**No. 47491.**

Supreme Court of Missouri,

Division No. 2.

Dec. 14, 1959.

Motion for Rehearing or to Transfer to
Court en banc Denied Jan. 11, 1960.

Ben J. Weinberger, St. Louis, for plain-tiff-appellant.

Adolph K. Schwartz, St. Louis, for re-spondent, Chapman, Schwartz & Chapman, St. Louis, of counsel.

**BARRETT, Commissioner.**

Miss Florence M. Heine, age 60, fell and was seriously injured as she and her sister, Mrs. Ward, were leaving the defendant's restaurant. After a jury award of $23,500 damages the court granted the restaurant a new trial because of an allegedly erroneous instruction. But upon Miss Heine's appeal the essentially meritorious question is whether there is any evidence, direct or cir-cumstantial, from which the finding of neg-ligent liability is reasonably permissible.

After an afternoon shopping trip Miss Heine and Mrs. Ward went in the restau-rant at Seventh and Washington streets for sandwiches. They entered the restaurant on the Washington Street side and after ob-taining their lunches sat at a table fifteen to twenty feet from the vestibule doors, Miss Heine facing the Washington Street entrance. As they ate Miss Heine saw the porter mopping the floor, first in the Wash-ington Street vestibule, then around where they were seated and finally towards the back of the restaurant. By the time they were leaving, after twenty to thirty min-

utes, the porter was mopping the St. Charles Street entrance. Miss Heine noted that the porter had two buckets on a cart and, "He was mopping, I believe, with a real wet soapy mop, rinse it out and mop again, and wipe up again." Because the porter was mopping at the rear entrance Miss Heine and her sister started out the Washington Street side. There are large plate-glass double doors, one set inside the restaurant opening onto a six-foot vestibule, and a second set at an inset entrance from which there is one step down to the concrete sidewalk. The vestibule doors were open but the outside doors was closed. The vestibule floor consists of terrazzo while the platform entrance is constructed of square tile. Miss Heine was walking four or five feet ahead of Mrs. Ward and as she stepped into the vestibule she said, "I started slipping and sliding. Before I knew it I was out on the sidewalk. That is how fast it happened, just like I was on ice."

The plaintiff, of course, relies upon the familiar principle that the proprietor of a restaurant owes to its patrons the duty of exercising ordinary care to see that the portions of its premises which may be expected to be used by its invitees are reasonably safe. The cases involving this fundamental principle have become so numerous, particularly in this jurisdiction, and the distinctions so subtle (Daughhette v. Montgomery Ward & Co., 236 Mo.App. 218, 228, 146 S.W.2d 72, 78) that cases are now annotated topically, depending on the place of injury or whether the fall was due to wax and oil on a store or restaurant floor (annotation 63 A.L.R.2d 591) or whether the floor was made slippery by reason of washing or cleaning. Annotation 63 A.L.R.2d 694. Since this is a wet floor case it is necessary to generally note only those factors peculiarly relevant to that particular situation. The proprietor is not an insurer of safety and it is not negligence to install terrazzo or tile floors (Schmoll v. National Shirt Shops, 354 Mo. 1164, 193 S.W.2d 605), and washing and cleaning floors is not per se evidence of negligence,

nor is the mere fact of a fall on a recently mopped floor evidence of negligence, or, on the other hand of contributory negligence. Annotation 63 A.L.R.2d loc. cit. 702, 723–724. And, the plaintiff must establish as the foundation of her case, "before issues relating to the proprietor's breach of his duty of care can be reached, that the floor on which he fell was, as a matter of fact, dangerously slippery from washing or cleaning at the time of the accident." Annotation 63 A.L.R.2d, loc. cit. 702. The necessary presence of this important prerequisite and foundation is illustrated by Cluett v. Union Electric Light & Power Co., Mo., 220 S.W. 865. See also Wilkins v. Allied Stores of Missouri, Mo., 308 S.W. 2d 623, and Daughhette v. Montgomery Ward & Co., supra.

In this latter connection counsel insists that there was also evidence of a "slimy substance on the floor" of which the plaintiff had no knowledge, the implication being that, in addition to proof of a slippery wet floor, the jury could also find the presence of a gob of undissolved detergent on the floor as was the fact in Douglas v. Douglas, Mo., 255 S.W.2d 756, and Van Brock v. First National Bank, 349 Mo. 425, 161 S.W.2d 258. There was a streak across the vestibule floor where Miss Heine had skidded, Mrs. Ward pointed it out to the store manager. And, after she had fallen, Miss Heine called her sister's attention to her shoes, pointed and said, " 'My shoes are so slippery.' " But without quotation from the record or illustrating except as the fact incidentally appears in another connection, there is no testimony from which it could be found that Miss Heine slipped on an isolated gob or mass of undissolved detergent. This is not to say that such proof is necessary; a recently mopped and wet terrazzo floor may be dangerous and all other relevant factors being present the proprietor of a restaurant or other place of business will be liable to its unwary patrons who are injured by reason of the fact. Moore v. Great Atlantic & Pacific Tea Co., 230 Mo.App. 495, 92 S.W.2d 912; Wine-

barger v. Fee, 305 Ky. 814, 205 S.W.2d 1010; Newell v. K. & D. Jewelry Co., 119 Conn. 332, 176 A. 405; Thogmartin v. Koppel, 145 Kan. 347, 65 P.2d 571; Ransom v. Kreeger Store, La.App., 158 So. 600; Surface v. Safeway Stores, 8 Cir., 169 F.2d 937; Brand v. Donahoe's Inc., 357 Pa. 474, 55 A.2d 362; Judson v. American Railway Express Co., 242 Mass. 269, 136 N.E. 103. The compelling attendant circumstances with consequent liability to a patron for injury caused by a fall on a recently mopped wet floor are forcefully illustrated by Hechler v. McDonnell, 42 Cal. App.2d 515, 109 P.2d 426. Here there was a fall and proof of a recently mopped, wet and slippery terrazzo floor, dangerous to patrons, and the question is whether in the detailed circumstances there was also present other essential factors prerequisite to the proprietor's liability.

These were the particularly detailed circumstances as Miss Heine left the lunch table and fell in the vestibule:

Direct Examination:

"I noticed on the floor in front of me where we started to walk out the doorway there was some wet streaks. They were streaky. * * *

"Q. Do you know what caused you to fall? A. Well, that wet water in the vestibule—it was soapy—it wasn't dry completely up. It wasn't dried up good.

"Q. Did you see that before you stepped on to it? A. Well, I seen some clear water there, but I thought it was safe, because I walked over the rest of the floor, and it was safe.

\*      \*      \*      \*      \*      \*

"Q. Were you informed in any way as to the condition of that floor before you fell? A. I walked over the floor. I was going out the doorway. There was a little wet place.

"Q. Were you informed as to the condition of that floor before you went over the floor? A. It looked safe to me. No, I wasn't informed, no.

\*      \*      \*      \*      \*      \*

Cross-Examination:

"Q. To get back to this step by step we are doing, while you were sitting there at the table and looking to the vestibule out there, I think you said you saw the porter actually mopping in the vestibule? A. Yes, I did.

\*      \*      \*      \*      \*      \*

"Q. Now, coming back again to the part where you stepped into the vestibule, with your first step you said you looked on the floor and saw something on the floor? A. Yes.

\*      \*      \*      \*      \*      \*

"Q. When you stepped into the vestibule and took your first step did you look at the floor of the vestibule? A. I looked down here to see where I was walking.

"Q. What did you see when you looked down? A. I didn't see anything to make me slip at the time. I just started slipping and sliding like I was on ice, and I was out on the walk.

"Q. Did you see water when you stepped in the vestibule? A. Well, there was some little tracks of water, just like in the front part of the restaurant. They weren't tricky (sic)—I walked through—I made the steps to the vestibule safe. I just glanced down —I thought it was safe and I started slipping and skidding and I went out the door.

"Q. You did see water in the vestibule? A. Little places.

"Q. Did you step on the water in the vestibule floor? A. I guess I did. That is what made me start sliding and slipping out the door.

"Q. Miss Heine, you say you guess you saw it—you guess you stepped on

it—that is what I want to know. I want to know what actually happened? A. I saw some places in the vestibule —they looked like they were safe to walk over, before I got in it, and I just stepped in them—that is when I started skidding, and I went out the door.

"Q. You did see water on the vestibule floor? A. Oh, yes.

"Q. You stepped in the water you saw there? A. Yes.

\* \* \* \* \* \*

Redirect Examination:

"Q. Now, as you walked into that vestibule, did you actually determine whether or not there was any slick or slimey substance on the floor with your naked eye? A. Well, it looked like slippy and slimey—there was little streaks of water it looked clear to me.

"Q. So it looked clear to you; is that right? A. Yes.

"Q. As I understand you to say, you did walk over some of those wet places in the restaurant, and that was all right—nothing wrong with it? A. Nothing wrong with it."

Miss Heine saw the porter mopping, she saw water on the restaurant floor as she arose to leave and she walked across it to the vestibule. Considered in its entirety her testimony is subject to no other interpretation or inference than that as she entered the vestibule she saw and was aware of water, even "soapy" or "slippy and slimey streaks of water," on the terrazzo floor but nevertheless proceeded; hence she had as much knowledge of the condition of the floor as the proprietor had and a warning of the hazard would have conveyed no additional information. In these circumstances Miss Heine was not unexpectedly confronted with an unknown or lurking hazard. Thus, even though there was proof of a wet and dangerously slippery floor and a resulting fall, there is

no evidence from which it is a permissible inference, within the rule, that the proprietor's negligence caused the plaintiff's injuries. Murray v. D'Oench Co., 347 Mo. 365, 147 S.W.2d 623; Bisceglia v. Cunningham Drug Stores, 350 Mich. 159, 85 N.W.2d 91.

Therefore, the trial court should have sustained the defendant's motions for judgment and, accordingly, the cause is remanded with directions to enter judgment for the defendant.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.